CLERK'S OFFICE U.S. DIST. COURT
AT ROANOKE, VA
FILED

JAN 24 2008

JOHN F. CORCORAN, CLERK
BY:
    DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | |
|---|---|
| **JASON MICHAEL DUNFORD,** ) | |
| Plaintiff, ) | Civil Action No. 7:08cv00018 |
| ) | |
| v. ) | **MEMORANDUM OPINION** |
| ) | |
| **GERALD A. MCPEAK,** ) | By: Hon. Glen E. Conrad |
| Defendant. ) | United States District Judge |

Plaintiff Jason Michael Dunford, an inmate at the New River Valley Regional Jail ("NRVRJ") in Dublin, Virginia, filed this pro se complaint pursuant to 42 U.S.C. § 1983, with jurisdiction vested under 28 U.S.C. § 1343, alleging that defendants violated his constitutional rights by imposing sanctions against him that were "not supported by enough evidence" and "more severe than for any other violation . . . in [NRVRJ's] inmate handbook." Plaintiff does not specify the remedies he seeks; however, the complaint includes a document that the court has construed and docketed as a motion [docket no. 5] seeking a temporary restraining order. Upon review of the record, the court concludes that the plaintiff has not stated a claim upon which relief may be granted. Therefore, the court will dismiss the complaint pursuant to 28 U.S.C. § 1915A(b)(1)[1], and the court will deny plaintiff's request for a temporary restraining order.

## I. Factual Summary[2]

On December 4, 2007, tattooing needles were found hidden in plaintiff's property during a search of plaintiff's cell. An inmate violation report was prepared, charging plaintiff with the offense of tattooing. A copy of the inmate violation report was given to plaintiff on December 5,

---

[1] Section 1915A(b)(1) provides that the court shall dismiss a complaint as soon as practicable if the court determines that it is frivolous, malicious, or fails to state a claim upon which relief may be granted.

[2] The court's summary is taken from plaintiff's complaint and documents submitted in support thereof.

2007. A hearing was conducted in the matter on December 9, 2007, and plaintiff was found guilty of the charge.[3] Plaintiff was subjected to the suspension of his visitation privileges for 90 days; additionally, plaintiff was placed in disciplinary segregation for 15 days, which were to run concurrent to the suspension of his visitation privileges.

The court will introduce additional facts as necessary in its analysis.

## II. Standard of Review

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege the violation of a right secured by the Constitution or laws of the United States and must show that the deprivation of that right was committed by a person acting under color of state law. West v. Atkins, 487 U.S. 42, 48 (1988). A complaint fails to state a claim upon which relief can be granted when no relief is available under any set of facts that could be proved consistent with the allegations of the complaint. Swierkiewicz v. Sorema N.A., 534 U.S. 506, 514 (2002); see also Bell Atlantic Corp. v. Twombly, 550 U.S. ___, slip op. at 8 (2007) (while the complaint need not provide detailed factual allegations, the basis for relief in the complaint must state "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do"; the Court specifically explained, id., slip op. at 18-24, that the Twombly analysis does not run counter to Swierkiewicz or impose a heightened pleading standard); Teachers' Retirement System of La. v. Hunter, 477 F.3d 162, 170 (4th Cir. 2007) (citing Swierkiewicz, 534 U.S. at 514, and stating that "a court may dismiss a complaint [for failure to state a claim upon which relief may be granted] only if it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations").

---

[3] Plaintiff signed and dated the inmate violation report. Plaintiff indicated his wish to appeal the decision of the hearing officer, and has submitted documentation of his appeal, indicating that he has exhausted the available administrative remedies in this matter.

2

## III. Analysis

Plaintiff contends that "it is impermissible to make up a sanction such as 15 days seg [sic] as well as 90 days [sic] loss of visitation" for his offense, given that the inmate handbook prescribes sanctions for "the most severe offenses" that, in plaintiff's view, are less punitive than the sanctions he received in the instant matter.[4] Plaintiff states that he is "not contesting [his] guilt," but that he is "contesting the legality of the sanctions which were imposed."[5] Construing plaintiff's complaint liberally, the court has determined that plaintiff alleges that his civil rights were violated by the following: his placement in administrative segregation; the 90 day suspension of his visitation privileges; and the prison's failure to follow and apply the policies promulgated in the inmate handbook.

### A. Administrative Segregation

An inmate's liberty "interests will be generally limited to the freedom from restraint which, while not exceeding the sentence in such an unexpected manner as to give rise to protection by the Due Process Clause of its own force, nonetheless imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." Sandin v. Conner, 515 U.S. 472, 484

---

[4] Plaintiff alleges that "[t]he inmate handbook states that [for] the most severe offenses," such as "assault on staff," 15 days of segregation is a "mandatory" sanction, and that the suspension of privileges, such as visitation, "may be suspended for a maximum of 30 days per offense." He further alleges that an inmate could receive a less punitive sanction for abducting "or even sexually assaulting another inmate or staff."

[5] Plaintiff adds that he should not have been charged with the offense of tattooing, but "should have been charged with possession of contraband" because he was in possession of a staple, out of which the tattooing equipment had been fashioned.

A prison administrator's response to one of plaintiff's grievances indicates that an "order posted by the Superintendent clearly state[d] that effective 10/01/07 . . . the charge described in the handbook would change and that the sanctions for this charge would change" and that "the posted order supersedes the [description of the charge and sanction] printed in the handbook." On December 21, 2007, in response to plaintiff's final appeal in the matter, Superintendent McPeak repeated that "sanctions for rule violations may be changed as necessary." Superintendent McPeak added that "[t]attooing is dangerous and illegal[,] especially in this environment."

3

(1995). Changes "in a prisoner's location, variations of daily routine, changes in conditions of confinement (including administrative segregation), and the denial of privileges [are] matters which every prisoner can anticipate [and which] are contemplated by his original sentence to prison." Gaston v. Taylor, 946 F.2d 340, 343 (4th Cir.1991). Furthermore, such changes are necessarily functions of prison management that must be left to the broad discretion of prison administrators to enable them to manage prisons safely and effectively. Id. Courts have held that placement and long-term detention in segregated confinement under Virginia's prison regulations does not give rise to any constitutionally protected liberty interest under Sandin. See, e.g., DeBlasio v. Johnson, 128 F. Supp.2d 315, 328-29 (E.D. Va. 2000), aff'd by Madison v. Johnson, 12 Fed. App'x. 149 (4th Cir. 2001) (unpublished). Thus, plaintiff has no due process claim concerning his confinement in segregation pursuant to disciplinary charges.[6] Moreover, as he fails to allege that receiving 15 days

---

[6] When an inmate demonstrates that a liberty interest is at stake or that the inmate is faced with loss of statutory good-time credits or solitary confinement, some limited federal due process protections apply. Wolff v. McDonnell, 418 U.S. 539, 557-58 (1974). Wolff outlines these due process guarantees as follows: (1) advanced written notice of the claimed violation; (2) disclosure of evidence against the defender; (3) the right to confront and cross-examine witnesses (unless the hearing officer finds good cause not to allow confrontation); (4) a neutral detached hearing body; and (5) a written statement of the finder of facts as to the evidence relied upon and the reasons for the disciplinary action taken. Id. at 564-71. In addition, there must be "some evidence" to support the disciplinary board's conclusions. Superintendent v. Hill, 472 U.S. 445, 447 (1985).

Here, plaintiff is entitled to no federal due process claim because the discipline imposed on plaintiff did not subject him to the loss of good-time credits or solitary confinement, Wolff, 418 U.S. at 557-58, and, as the court will discuss elsewhere in its opinion, he had no protected liberty interest in avoiding 90 days' loss of visitation privileges. Applying Sandin, it is clear that the loss of visitation privileges is "within the normal limits or range of custody which the conviction has authorized the [prison authorities] to impose," id., 515 U.S. at 478, and plaintiff experienced no atypical hardship. Thus, there is no federal right to enhanced procedural protections at issue here.

Nonetheless, the court notes that the record suggests that plaintiff received the procedural guarantees of Wolff. 418 U.S. at 564-71, and plaintiff does not allege that he failed to receive these protections. The record further suggests that there is "some evidence" to support the IHO's conclusions. Superintendent v. Hill, 472 U.S. at 447. Federal courts will not review the accuracy of a disciplinary committee's finding of fact. Kelly v. Cooper, 502 F. Supp. 1371, 1376 (E.D. Va. 1980). Such findings of fact will only be disturbed if they are unsupported by any evidence or are wholly arbitrary and capricious. Smith v. Rabalais, 659 F.2d 539, 545 (5th Cir. 1981); see also Chevron v. Natural Res. Def. Council, 467 U.S. 837, 844 (1984) (an agency's decisions are not to be second-guessed by federal courts unless they are arbitrary, capricious, or manifestly contrary to statute).

in segregated confinement has caused him any significant physical or mental health injury, he fails to state any claim of cruel and unusual punishment in violation of the Eighth Amendment. See Strickler v. Waters, 989 F.2d 1375, 1380-81 (4th Cir. 1993). Accordingly, this claim will be dismissed, pursuant to 28 U.S.C. § 1915A(b)(1), for failure to state a claim upon which relief may be granted.

### B. Visitation Privileges

Neither prisoners nor would-be visitors have a constitutional right to visitation. White v. Keller, 438 F. Supp. 110, 115 (D. Md. 1977) (but leaving open the possibility that a permanent ban on all visitation could implicate the Eighth Amendment), aff'd, 588 F.2d 913 (4th Cir. 1978); see also Kentucky Dep't of Corrections v. Thompson, 490 U.S. 454, 461, (1989) (finding no right to visitation guaranteed by the Due Process Clause). In sum, visitation is a privilege, not a constitutional right. Wright v. Vitale, 937 F.2d 604 (4th Cir. 1991). Accordingly, plaintiff has failed to state a claim under § 1983 regarding the 90-day suspension of his visitation privileges, and this claim will be dismissed, pursuant to 28 U.S.C. § 1915A(b)(1), for failure to state a claim upon which relief may be granted.

### C. Policy Violations

To the extent plaintiff alleges that defendant violated his constitutional rights by failing to follow and apply the policies promulgated in the inmate handbook[7], the failure of a state to meet the

---

[7] Again, the court notes that a prison administrator, in response to one of plaintiff's grievances, informed plaintiff that an "order posted by the Superintendent clearly state[d] that effective 10/01/07 . . . the charge described in the handbook would change and that the sanctions for this charge would change" and that "the posted order supersedes the [description of the charge and sanction] printed in the handbook." And, on December 21, 2007, in response to plaintiff's final appeal in the matter, Superintendent McPeak repeated that "sanctions for rule violations may be changed as necessary."

5

requirement of a state-created procedural rule does not rise to the level of a violation of the due process clause. Riccio v. County of Fairfax, 907 F.2d 1459, 1469 (4th Cir. 1990) (holding that "[i]f state law grants more procedural rights than the Constitution would otherwise require, a state's failure to abide by that law is not a federal due process issue").[8] Accordingly, this claim will be dismissed, pursuant to 28 U.S.C. § 1915A(b)(1), for failure to state a claim upon which relief may be granted.[9]

## IV. Temporary Restraining Order

Plaintiff requests that the court require NRVRJ and Superintendent McPeak "to cease and desist any actions or punishment towards me until the proceedings of this complaint be either remedied or dissmissed [sic]." A district court should issue preliminary injunctive relief only sparingly, using the "balance of hardship" test. In applying this test, the court should consider four factors: 1) whether the plaintiff will suffer immediate and irreparable harm if the relief is not granted; 2) the likelihood of harm to the defendants if relief is granted; 3) the likelihood that plaintiff will eventually succeed on the merits; and 4) whether the public interest lies with granting the relief. Wetzel v. Edwards, 635 F.2d 283, 286-87 (4th Cir. 1980) (citing Blackwelder Furniture Co. of

---

[8] To the extent plaintiff's claim could be construed as alleging a violation of the Equal Protection Clause of the Fourteenth Amendment, plaintiff has not alleged that similarly situated inmates, i.e., inmates found guilty of the offense of tattooing, have been treated differently from him. Plaintiff's claim does not implicate a burden on a fundamental right, and prisoners are not a suspect class. See Moss v. Clark, 886 F.2d 686, 690 (4th Cir. 1989). Even where similarly situated persons are treated differently, a state classification "that neither proceeds along suspect lines nor infringes fundamental constitutional rights must be upheld against equal protection challenge if there is any reasonably conceivable state of facts that could provide a rational basis for [it]." FCC v. Beach Communications, Inc., 508 U.S. 307, 313 (1993); see also McGowan v. Maryland, 366 U.S. 420, 426 (1961) (noting that such classifications "will not be set aside if any state of facts reasonably may be conceived to justify it").

[9] To the extent plaintiff believes he has an actionable claim against the defendants under state law, the court declines to exercise supplemental jurisdiction over such claims, pursuant to 28 U.S.C. § 1367(c)(3), which provides that "district courts may decline to exercise supplemental jurisdiction over a claim . . . if . . . the district court has dismissed all claims over which it has original jurisdiction . . . ."

6

Statesville, Inc. v. Seilig Manufacturing, Co., 550 F.2d 189, 195 (4th Cir. 1977)). Functions of prison management must be left to the broad discretion of prison administrators to enable them to manage prisons safely and effectively. Gaston, 946 F.2d at 343. Courts should grant preliminary injunctive relief involving the management of prisons only under exceptional and compelling circumstances. Taylor v. Freeman, 34 F.3d 266, 269 (4th Cir. 1994). Without a showing that plaintiff will suffer imminent, irreparable harm, the court cannot grant interlocutory injunctive relief. Rum Creek Coal Sales, Inc. v. Caperton, 926 F.2d 353, 360 (4th Cir. 1991). The plaintiff must show that the irreparable harm he faces in the absence of relief is "neither remote nor speculative, but actual and imminent." Direx Israel, Ltd. v. Breakthrough Medical Group, 952 F.2d 802, 812 (4th Cir. 1991) (citation omitted). Given that plaintiff's allegations do not state any constitutional claim, plaintiff has not established a likelihood that he will eventually succeed on the merits or that the public interest lies with granting the relief. Plaintiff has not alleged facts indicating that he will suffer immediate and irreparable harm in the absence of interlocutory injunctive relief of some kind. Accordingly, plaintiff's request for injunctive relief does not satisfy the "balance of hardships" test, and must be denied.

Insofar as plaintiff's request for injunctive relief has been construed and docketed as a request for a temporary restraining order, such orders are issued only rarely, when the movant proves that he will suffer injury if relief is not granted before the adverse party could be notified and have opportunity to respond. See Fed. R. Civ. P. 65(b). Such an order would be effective only until such time as a hearing on a preliminary injunction could be arranged. As it is clear at this juncture that plaintiff has stated no claim of constitutional significance, and is not entitled to a preliminary injunction, the court finds no basis upon which to grant him a temporary restraining order.

## V. Conclusion

Based on the foregoing, the court finds that plaintiff has not presented any claims that constitute a violation of his constitutional rights. Therefore, the court will dismiss the complaint pursuant to 28 U.S.C. § 1915A(b)(1), and the court will deny plaintiff's request for a temporary restraining order.[10]

The Clerk is directed to send copies of this memorandum opinion and accompanying order to plaintiff.

ENTER: This 24th day of January, 2008.

_____
United States District Judge

---

[10] Federal law provides that a prisoner may not bring a civil action without complete prepayment of the appropriate filing fee if the prisoner has brought, on three or more occasions, an action or appeal in a federal court that was dismissed as frivolous, as malicious, or for failure to state a claim upon which relief may be granted, unless the prisoner is in imminent danger of serious physical injury. See 28 U.S.C. §1915(g). Plaintiff is hereby advised that this dismissal constitutes a "strike" under §1915(g). Plaintiff is further advised that he may appeal this decision pursuant to Rules 3 and 4 of the Federal Rules of Appellate Procedure by filing a notice of appeal with this court within 30 days of the date of entry of this Order, or within such extended period as the court may grant pursuant to Rule 4(a)(5).